KILPATRICK TOWNSEND & STOCKTON, LLP
Caroline Y. Barbee (SBN 239343)
Cbarbee@KilpatrickTownsend.com
Trevor C. Maxim (SBN 317859)
Tmaxim@KilpatrickTownsend.com
9720 Wilshire Boulevard PH
Beverly Hills, CA 90212
Telephone: (310) 248-3830
Facsimile:  (310) 860-0363

Judith A. Powell (*pro hac vice* pending)
Jpowell@kilpatricktownsend.com
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Attorneys for Plaintiff,
FCA US LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FCA US LLC,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>WENDY YU, Individually and dba ICE BEAR ATV, PACIFIC RIM INTERNATIONAL WEST, INC., and DOES 1 through 10,<br><br>　　　　　　Defendants. | **CASE NO.:  18-9068**<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK COUNTERFEITING, TRADEMARK DILUTION, AND UNFAIR COMPETITION** |

# COMPLAINT

Plaintiff FCA US LLC ("FCA") states its Complaint against Defendants Wendy Yu, individually and dba Ice Bear ATV, Pacific Rim International West, Inc., and Does 1 through 10 (collectively "Defendants") as follows:

## NATURE OF THE CASE

1. This action arises out of Defendants' unauthorized use of FCA's famous Jeep® and Jeep grille design trademarks and Jeep® Wrangler® vehicle trade dress through marketing and sale of off-road vehicles that are replicas of FCA's famous Jeep® Wrangler® vehicle. As a result of Defendants' marketing and sale of products that display FCA's trade dress and grille design mark, and that have been offered in connection with the Jeep® mark, consumers are likely to be confused, and FCA has been and will be irreparably injured. Accordingly, FCA brings this action for (i) trademark infringement and counterfeiting of FCA's registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (ii) trademark dilution in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c); (iii) federal unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); and (iv) trademark infringement under state common law. FCA seeks to enjoin Defendants from causing further harm to consumers and to FCA and to recover damages from Defendants for the harm their actions have already caused.

## PARTIES

2. Plaintiff FCA is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan. FCA is the owner of the Jeep® brand, Jeep Trade Dress, and Grille Design that are the subject of this Complaint.

3. Defendant Wendy Yu is an individual who is doing business as Ice Bear ATV and is a resident of this district, who may be served with process at 10580 Mulberry Avenue, Fontana, California, 92337.

4. Defendant Pacific Rim International West, Inc. ("Pacific Rim") is a corporation organized under the laws of the state of California with its principal place of business at 10580 Mulberry Avenue, Fontana, California, 92337. Pacific Rim is, on information and belief, doing business as Ice Bear ATV.

5. Defendants Does 1 through 10 (the "Doe Defendants") are individuals who have acted jointly and in concert with the named Defendants to commit the acts complained of herein. The Doe Defendants' true names and capacities are presently unknown to Plaintiffs, but each of the fictitiously named Doe Defendants is responsible jointly and individually for the infringement and other acts and occurrences alleged in this Complaint, and each of the fictitiously named Doe Defendants proximately caused the harm alleged herein.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367(a).

7. This Court has personal jurisdiction over the Defendants because each is a resident of this State, transacts business within this State, or has otherwise made or established contacts with this State sufficient to permit the exercise of personal jurisdiction over it.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to FCA's claims occurred in this District, in that Defendants are marketing and selling the products that are the subject of this Action in this District. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1400.

## FACTS

### FCA and the Jeep® Brand

9. FCA is a leading United States automotive vehicle manufacturer and producer of Chrysler®, Dodge®, Ram®, and Jeep® brand cars and trucks.

10. For more than seventy years, FCA and its predecessors in interest ("FCA" hereinafter including such predecessors) have continuously manufactured, marketed, and sold automotive vehicles under the famous Jeep® brand name. FCA has expended hundreds of millions of dollars promoting the Jeep® brand and has sold tens of millions of vehicles under the Jeep® brand name.

11. Among the vehicles marketed under the Jeep® brand name over the years, are the Wrangler® vehicle and its predecessor, the CJ, which vehicles share a unique and distinctive overall appearance that is instantly recognizable to the general consuming public.  This distinctive overall appearance includes a boxy body design, a signature flat-appearing grille with elongated vertical slots and a keystone outline that curves around round headlamps on the upper part of the grille (the "Grille Design"), trapezoidal front wheel wells with fenders or fender flares that extend beyond the front of the grille, a substantially flat hood that tapers to be narrower at the front with curved side edges, exterior hood latches, and door cutouts above a bottom portion of the side body panels (collectively, the "Jeep Trade Dress").

12. FCA's Jeep® Wrangler® vehicle is a tremendous commercial success, with millions of the vehicles having been sold throughout the United States over the years.  Each vehicle functions as a rolling billboard for the Jeep® brand, exposing the unique Jeep Trade Dress and its famous Grille Design to millions of U.S. consumers every day.

13. Jeep® vehicle owners are passionate about the brand and seek to incorporate it in their overall lifestyle by purchasing and using a wide variety of other products that display or are associated with the brand or its vehicles.  Jeep® brand enthusiasts buy hundreds of thousands of dollars' worth of licensed lifestyle products each year that display the Jeep® brand, the Jeep® vehicle, the Jeep® vehicle grille design, and/or, because the designs are so recognizable, designs based on the vehicle or grille.  Each year, thousands also attend Jeep® brand enthusiast events around the country.  Illustrative of their enthusiasm and the strong connection that loyalists feel to the brand, it is not unusual to see them displaying the bumper sticker: "It's a Jeep® thing . . . you wouldn't understand"® (Reg. No. 2700419), and indeed, because of loyalists' enthusiasm, the Jeep® brand has been recognized both as a "cult brand," and as the "most patriotic brand" in the U.S.

**The Jeep® CJ and Wrangler® Models**

14. For over forty years, from 1945 through 1986, FCA produced and sold the predecessor to today's Jeep® Wrangler® vehicle, known as Jeep® CJ. The CJ displayed the Jeep Trade Dress and Grille Design, as shown in illustrative photographs of the CJ attached as **Exhibit A**. Although FCA no longer sells the CJ, the model remains in use and popular among enthusiasts.

15. Because of the rich legacy of the Jeep® brand and the connection that its enthusiasts feel toward its history, FCA incorporates the Jeep® CJ into promotion of the brand, including by displaying the CJ in images on FCA's Jeep®.com website, such as shown in **Exhibit B**, and in media photographs, such as shown in **Exhibit C**, and by periodically including CJ models at various events, such as activities held in partnership with the USO. Jeep® CJ vehicles are also prominently featured at the annual Jeep® Fest held in Toledo, Ohio, where the Jeep® Wrangler® vehicle is assembled. Through this promotion, and the continuing use of Jeep Trade Dress and Grille Design in today's vehicles, the CJ continues to be recognized by the public as exclusively associated with the Jeep® brand.

16. In 1986, the Jeep® CJ model evolved into the Jeep® Wrangler® model, retaining the basic CJ appearance, but providing greater versatility, comfort, and capability.

17. Since 1986, a number of Jeep® Wrangler® models and special editions have been introduced, each continuing to evoke the Jeep® CJ design evolution and displaying the Jeep Trade Dress and Grille Design. Representative photographs of Jeep® Wrangler® vehicles are attached as **Exhibit D**, illustrating that the Jeep® Wrangler® vehicle has maintained the same iconic overall design cues as the Jeep® CJ, a fact that FCA has highlighted in its marketing over the years. Indeed, the introduction of the new 2018 Jeep® Wrangler® model in the fall of 2017 resulted in substantial independent press coverage that commented on the Wrangler® vehicle's creating the same impression as the CJ.

18. The Jeep® Wrangler® vehicle and various editions of it have been the subject of numerous awards and accolades, including, for example:

- Hottest 4x4 SUV from the Specialty Equipment Manufacturers Association in each of the years 2010 through 2017;
- Four-Wheeler of the Year Award from the famous and respected off-road vehicle authority *Four Wheeler* magazine, 2007, 2012, and 2014;
- 4x4 of the Decade from *Four Wheeler* magazine, 2012; and
- 4x4 of the Year from the renowned *Petersen's 4 Wheel & Offroad* magazine, 2013.

19. Over the decades, FCA has invested substantially in marketing that is designed to enhance consumer recognition of the iconic Jeep Trade Dress, including the distinctive Grille Design, as singularly associated with the Jeep® brand and to promote the quality and reliability of goods provided in connection with its marks. FCA has expended hundreds of millions of dollars on marketing and advertising, including print, television, and online, that prominently features the overall Jeep Trade Dress and the signature Grille Design in conjunction with the Jeep® brand name.

20. FCA also promotes the Jeep Trade Dress and Grille Design by featuring Wrangler® vehicles at numerous events attended by hundreds of thousands each year, including, among others, a) automobile shows such as the North American International Auto Show, the Chicago Auto Show, the New York Auto Show, and the Los Angeles Auto Show, b) industry trade shows such as the Specialty Equipment Marketing Association ("SEMA"), c) sponsored events such as the Winter X Games, and d) consumer enthusiast events, such as the Moab Easter Jeep Safari, Jeep Jamborees, and Camp Jeep® activities.

21. As part of FCA's marketing, FCA also expends substantial time, money, and effort developing and promoting Jeep® brand concept cars that emphasize the Grille Design and elements of the Jeep Trade Dress, including the CJ66, as shown in **Exhibit E**. Revealed at SEMA in November, 2016 and shown at multiple consumer

1  events thereafter, the Jeep® CJ66 concept car has been viewed by hundreds of
2  thousands of consumers and automotive industry representatives.
3    22.  Furthermore, the Grille Design is so recognizable that, over the years
4  FCA has used and licensed others to use, various stylizations of the design, including
5  for example, the following:

 

10   23.  Aside from FCA's own promotion of its Jeep Trade Dress, Jeep® CJ and
11  Wrangler® vehicles have been incorporated into popular culture, evidencing strong
12  consumer recognition and appeal of the designs.  For example, vehicles have been
13  featured in a number of well-known movies and television shows, with the CJ having
14  been featured in The Terminator, Lost, The Dukes of Hazard, Mork & Mindy, and
15  Charlie's Angels, and the Wrangler® model having been featured in the movies
16  Jurassic Park, Back to the Future, Tomb Raider, and Sahara.  The Wrangler® model
17  and has also been featured in video games, such as Laura Croft Tomb Raider and Call
18  of Duty.
19    24.  FCA also promotes the Jeep® brand, Jeep Trade Dress, and Grille Design
20  through a wide variety of licensed merchandise that incorporate Jeep® CJ and Jeep®
21  Wrangler® designs and stylizations of them, including ride-on toys and battery-
22  powered go-karts, as well as clothing, jewelry, strollers, miniature vehicle replicas,
23  decals, video games, key chains, tumblers, and mugs, such as shown in **Exhibit F**.  As
24  a result of FCA's extensive licensing of the designs, consumers have long been
25  accustomed to expecting that even non-automotive vehicle products, including
26  vehicles that are not standard highway passenger vehicles, that bear the Grille Design,
27  the Jeep® brand name, and/or the Jeep Trade Dress are offered or authorized by FCA
28  and the Jeep® brand.

**FCA's Registered Marks**

25. In addition to its strong common law rights developed through its extensive use and promotion of the Jeep® brand, Jeep Trade Dress, and Grille Design, FCA owns multiple federal trademark registrations with the United States Patent and Trademark Office for the Jeep® mark and the Jeep Grille Design.

26. FCA's federal trademark registrations for the mark Jeep® include the following:

| Mark | Registration Number | Summary Description of Goods or Services | Date of First Use |
|---|---|---|---|
| Jeep | 526,175 | Automobiles, structural parts thereof | 2/05/1943 |
| Jeep | 1,081,322 | Automotive vehicle repairs and maintenance service | 1948 |
| Jeep | 1,129,553 | Booklets dealing with automobiles | 3/29/1974 |
| Jeep | 1,236,540 | Toys – namely model replicas of land vehicles | 1979 |
| Jeep | 2,586,284 | Infant and toddler strollers | 2/28/2001 |
| Jeep | 2,729,404 | Sleeping bags | 8/1/2002 |
| Jeep | 2,635,685 | Tents | 6/7/2002 |
| Jeep | 1,134,153 | Small domestic utensils and containers | 3/29/1974 |
| Jeep | 1,129,828 | Knives | 3/29/1974 |
| Jeep | 1,130,015 | Clothing | 3/29/1974 |
| Jeep | 2,849,309 | Boots | 8/25/2003 |
| Jeep | 1,128,972 | Jewelry | 3/29/1974 |
| Jeep | 2,681,201 | Watches | 9/1995 |
| Jeep | 2,461,861 | Eyeglasses and sunglasses | 7/7/1998 |

True and correct copies of these trademark registrations are attached as **Exhibit G**.

27. FCA's federal trademark registrations for the Grille Design include the following:

| Mark | Registration Number | Summary Description of Goods or Services | Date of First Use |
|---|---|---|---|
| | 1,170,088 | Cabs, taxi; Cars (not emergency); Hearses; Limousines; Race cars; Taxicabs | 1941 |
| | 2,732,021 | Parts for motor vehicles, namely grilles and grille appliqués | 3/10/1986 |
| | 2,161,779 | Sports utility vehicles | 1/01/1996 |
| | 2,794,553 | Motor vehicle parts, namely grilles and grille appliqués | 1/01/1996 |

(collectively, the "Grille Design Marks"). True and correct copies of these trademark registrations are attached as **Exhibit H**.

28. All of the foregoing registrations constitute *prima facie* evidence of the distinctiveness and validity, and FCA's exclusive ownership, of the marks. Moreover, because affidavits have been filed under 15 U.S.C. ¶§§ 1058 and 1065 for them, all of the registrations are incontestable and constitute conclusive proof of the validity of the covered marks.

29. Because of FCA's extensive and longstanding exclusive use and promotion of the Jeep Trade Dress and the Jeep® and Grille Design Marks, members of the public throughout the United States instantly recognize the trade dress and marks as designations of source of FCA's goods. Indeed, with sales of Jeep® brand vehicles in more than 40 countries, the Jeep Trade Dress, and the Grille Design and Jeep® marks have achieved international fame, widely recognized around the world as unique identifiers of FCA products.

**Defendants' Infringing Acts**

30. Without authorization, Defendants are marketing and selling Jeep® Wrangler® replica off-road vehicles that incorporate the Jeep Trade Dress (the "Infringing Products"), as shown in **Exhibit I**.

31. In marketing the Infringing Products, Defendants are marketing and selling vehicles that display FCA's famous Grille Design mark or a confusingly similar imitation of it.

32. Defendants have also utilized FCA's famous Jeep® mark to market their Infringing Products, as shown in **Exhibit J**.

33. Consumers are likely to be confused that Defendants' vehicles that incorporate FCA's famous Jeep Trade Dress and Grille Design and that have been marketed under the Jeep® brand name are produced, authorized, endorsed, or approved by, or associated with, FCA and the Jeep® brand.

34. Upon discovering Defendants' Infringing Products, FCA wrote to Defendants and requested that they cease the infringing activities.

35. Defendant Yu initially responded that Defendants would cease marketing and selling the Jeep® replicas unless FCA were willing to allow the Infringing Products to be sold under license. See **Exhibit K** hereto. Thereafter, FCA informed Ms. Yu that it would not license the products. However, despite FCA's subsequent multiple attempts to obtain compliance with Ms. Yu's agreement to cease selling the Jeep® replicas, Defendants have continued to market and sell the Infringing Products.

**Harm to FCA**

36. As a direct consequence of Defendants' unauthorized use of the Jeep® trademark, the Grille Design marks, Jeep Trade Dress, and confusingly similar imitations, FCA has been irreparably injured and the purchasing public has likely been deceived into believing that the Infringing Products marketed by Defendants are produced, or authorized, endorsed or approved by FCA.

37. FCA has invested tremendous time, money, and effort in building the goodwill associated with the Jeep® brand. FCA is likely to be harmed by Defendants' marketing and selling the Infringing Products because FCA cannot control the standards and quality of Defendants' products that consumers are likely to associate with FCA and its Jeep® brand, and thus cannot control consumers' perception of its brand. Consumers who associate the Infringing Products with the Jeep® brand will attribute to the Jeep® brand and FCA defects and negative impressions they may develop about the Infringing Products.

38. Furthermore, Defendants' unauthorized use of Plaintiff's Jeep® mark, and imitations of Plaintiff's Grille Design marks and Jeep Trade Dress are likely to dilute the distinctiveness of Plaintiff's famous marks by eroding the public's exclusive identification of the marks with Plaintiff and by tarnishing and degrading the positive associations and prestigious connotations of FCA's marks.

39. Defendants are willfully ignoring FCA's exclusive rights in its marks and intentionally seeking to trade on their goodwill and communicative power. If not stopped, Defendants' conduct will cause significant consumer confusion, blur the public's exclusive association of the Jeep® and Grille Design marks with FCA, tarnish and erode the value of FCA's marks, and harm FCA's goodwill.

## COUNT I

## Federal Trademark Infringement

## <u>15 U.S.C. § 1114</u>

40. FCA repeats and incorporates by reference the allegations in paragraphs 1-39.

41. Defendants' unauthorized use of FCA's registered Jeep® mark, and confusingly similar imitations of the Grille Design Marks likely has caused and is likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin or sponsorship of Defendants and their non-Jeep®

brand vehicle.  Defendants' actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

42. Defendants' unauthorized use of FCA's marks has caused and, unless restrained, will continue to cause great and irreparable injury to FCA, the Jeep® brand, the Grille Design Marks, and to the business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving FCA with no adequate remedy at law.  FCA, therefore, is entitled to injunctive relief under 15 U.S.C. § 1114.

43. Defendants' actions demonstrate a willful intent to trade on the reputation and goodwill associated with FCA's marks, thereby entitling FCA to recover an amount equal to treble Defendants' profits, treble FCA's damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

## COUNT II

### Federal Trademark Counterfeiting

### 15 U.S.C. §1114

44. FCA repeats and incorporates by reference the allegations in paragraphs 1 - 43.

45. Defendants have sold and distributed vehicles that bear a spurious mark that is virtually identical to and substantially indistinguishable from FCA's registered Grille Design Marks.

46. As a result of Defendants' use and sale of vehicles bearing the Grille Design Marks, Defendants are using counterfeit marks as that term is defined in Section 34(d)(1)(B) of the Lanham Act.

47. Defendants' activities likely have caused and are likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin or sponsorship of their vehicles.  Defendants' actions constitute counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

48. Defendants' activities have caused and, unless restrained, will continue to cause great and irreparable injury to FCA, the Grille Design, and to the business and

1   goodwill represented thereby, in an amount that cannot be presently ascertained,
2   leaving FCA with an inadequate remedy at law. FCA is therefore entitled to injunctive
3   relief.

4       49.   FCA is further entitled to an accounting for profits, damages, costs, and
5   reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117.  In accordance with 15
6   U.S.C. § 1117(b), FCA is also entitled to trebling of the profits and damages, and to
7   prejudgment interest.  Alternatively, pursuant to 15 U.S.C. § 1117(c), FCA is entitled
8   to recover statutory damages for Defendants' willful use of counterfeit marks.

## COUNT III

### Federal Trademark Dilution

### <u>15 U.S.C. 1125(c)</u>

12      50.   FCA repeats and incorporates by reference the allegations in paragraphs 1
13  - 49.

14      51.   The Jeep® mark, Grille Design, and Jeep Trade Dress are distinctive and
15  famous.

16      52.   FCA has extensively used and promoted its marks for decades.  FCA has
17  expended billions of dollars in marketing in connection with the marks, sold billions
18  of dollars of products in connection with them, and obtained multiple trademark
19  registrations for them.  The marks are widely recognized as source identifiers for the
20  Jeep® brand and FCA among the general consuming public throughout the
21  United States.

22      53.   Defendants' use of the Jeep® mark, Grille Design, and Jeep Trade Dress
23  in connection with non-Jeep® brand vehicles is likely to cause dilution of FCA's
24  famous marks.  In using the marks for its Infringing Products, Defendants have acted
25  willfully with an intent to trade on the recognition of FCA's famous marks.

26      54.   Defendants' actions entitle FCA to obtain injunctive relief pursuant to 15
27  U.S.C. § 1125.  Because Defendants willfully intended to trade on the recognition of
28  FCA's famous marks, FCA is further entitled to recover an amount equal to treble

1  Defendants' profits, treble FCA's damages, costs, and reasonable attorneys' fees
2  pursuant to 15 U.S.C. §1117.

## COUNT IV

### Federal Unfair Competition

### 15 U.S.C. § 1125(a)

6  55.  FCA repeats and incorporates by reference the allegations of paragraphs 1- 54.

8  56.  Defendants' unauthorized use of the Jeep® mark, Grille Design, and Jeep Trade Dress or confusingly similar imitations thereof constitutes false representations, false descriptions and false designations of origin that likely have caused and are likely to cause confusion or mistake, or to deceive as to the affiliation, connection or association of Defendants and their non-Jeep® brand vehicle with FCA, or as to the origin, sponsorship or approval of Defendants and their non-Jeep® brand vehicle. Such actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

16  57.  Defendants' unauthorized use of FCA's marks or confusingly similar imitations thereof constitute false representations, false descriptions and false designations of origin that likely have caused and are likely to cause confusion or mistake, or to deceive as to the affiliation, connection or association of their vehicles with FCA, or as to the origin, sponsorship or approval of their vehicles. Such actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

23  58.  Defendants' unauthorized use of FCA's marks or confusingly similar imitations thereof has caused and, unless restrained, will continue to cause great and irreparable injury to FCA, the Jeep® brand, the Grille Design, the Jeep Trade Dress, and to the business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving FCA with no adequate remedy at law. FCA, therefore, is entitled to injunctive relief under 15 U.S.C. § 1114.

14
COMPLAINT

59. Defendants' actions demonstrate a willful intent to trade on the reputation and goodwill associated with FCA's marks, thereby entitling FCA to recover treble Defendants' profits, treble damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

**PRAYER FOR RELIEF**

WHEREFORE, FCA prays:

1. That the Court enter judgment that Defendants' actions have violated and, unless enjoined, will continue to violate the rights of FCA under Sections 32 and 43 of the Lanham Act, and under state common law.

2. That the Court permanently enjoin and restrain Defendants, their owners, directors, officers, agents, servants, employees, subsidiaries, affiliates, and all persons acting in concert or in participating with Defendants:

    (a) From marketing or selling the Jeep® replica vehicle;

    (b) From using the Jeep®, and Jeep Grille Design marks and Jeep Trade Dress, or any other trademark, service mark, name, logo or source designation of any kind that is confusingly similar to or dilutive of FCA's marks for any product or service;

    (c) From otherwise competing unfairly with FCA in any manner; and

    (d) From conspiring with, aiding, assisting or abetting any other person or business entity from engaging in or performing any of the activities referred to in subparagraphs (a)-(c) above.

3. That the Court enter an order allowing seizure of the counterfeit goods and documentation respecting them pursuant to 15 U.S.C. § 1116.

4. That the Court order Defendants, their owners, directors, officers, agents, servants, employees and all persons acting in concert or participating with Defendants to deliver up for destruction all infringing articles and materials in their possession or control that depict the unauthorized use of FCA's marks.

5. That the Court order Defendants to file with the Court and to serve on

counsel for FCA, within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the foregoing injunction provisions.

6. That the Court order an accounting and render judgment against Defendants for an amount equal to treble all profits received from their unauthorized use of FCA's marks.

7. That the Court enter judgment in favor of FCA for all damages sustained on account of Defendants' trademark infringement, unfair competition and false designation of the origin of its products and that such damages be trebled pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

8. That FCA be awarded its attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1117(a).

9. For such other and further relief as the Court deems just and equitable.

DATED:  October 22, 2018            KILPATRICK TOWNSEND & STOCKTON, LLP

By:  */s/ Caroline Y. Barbee*
　　　CAROLINE Y. BARBEE
　　　TREVOR C. MAXIM
　　　Attorneys for Plaintiff
　　　FCA US LLC

Judith A. Powell (*pro hac vice* pending)
Kilpatrick Townsend &Stockton LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia  30309-4530
(404) 815-6500